RECEIVED
IN ALEXANDRIA, LA.
SEP 2 6 2013
TONY R. MOORE, CLERK
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| THE TURFGRASS GROUP, INC. AND UNIVERSITY OF GEORGIA RESEARCH FOUNDATION, INC. | : | DOCKET NO. 3:10-1354 |
| VS. | : | JUDGE TRIMBLE |
| NORTHEAST LOUISIANA TURF FARMS, LLC AND JEFFREY CLIFTON NICOLLE, INDIVIDUALLY | : | MAGISTRATE JUDGE HAYES |

### MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #57) wherein defendants, Northeast Louisiana Turf Farms, LLC and Jeffery Clifton Nicolle, individually (collectively referred to as "Louisiana Turf") seek to dismiss the instant lawsuit because it is barred by the statute of limitations.

### FACTUAL STATEMENT

For purposes for this motion for summary judgment only, plaintiffs accept the facts in the complaint as true.[1] Plaintiffs assert that defendants purchased thirty (30) packages of TifBlair certified seed from a retail outlet (The Patten Seed Company). The seed and sod is a centipede grass variety that is protected by Plant Variety Protection Certificate Number 9600255. An exclusive Plant Variety Protection Certificate was issued to the University of Georgia Research Foundation, Inc. ("UGARF") which allows it to make, have made, use, sell and offer for sale TifBlair. UGARF

---

[1] R. #57, p. 2, ¶ 1.

issued an exclusive Seed Supply and Sublicense Agreement to The Turfgrass Group, Inc. ("Turfgrass").[2] Turfgrass is required to provide notice on the seed and sod that TifBlair is protected by the Plant Variety Protection Act ("PVPA").[3]

Plaintiffs allege that defendants had actual notice and knowledge that TifBlair was federally protected by the PVPA.[4] 7 U.S.C. § 2541 of the PVPA provides that it is an infringement of the owner's rights in a protected variety, inter alia, to sell the variety without authorization of the owner or to dispense the variety to another in a form that can be propagated without notice that it is a protected variety.[5] The statute also provides that it is an infringement to instigate or induce any act that constitutes an infringement.[6] More specifically, it is an infringement to sell or market the protected variety or offer it or expose it for sale, deliver it, ship it, consign it, exchange it, or solicit an offer to buy it, or any other transfer of title or possession of it; dispense the variety to another, in a form which can be propagated, without notice as to being a protected variety under which it was received; condition the variety for the purpose of propagation; stock the variety for any of these purposes; instigate or actively induce performance of any of the foregoing acts.

Plaintiffs assert that after defendants purchased the seed, they then planted it on their sod farm for resale without Turfgrass' or UGARF's authorization.[7] Plaintiffs maintain that defendant's

---

[2] Complaint, ¶¶ 14-16. R. #1.

[3] Id.

[4] Id., ¶ 21.

[5] Id., ¶ 22.

[6] Id., ¶ 22.

[7] Id., ¶ 32.

2

actions regarding their protected TifBlair variety constitutes illegal uses and illegal planting of TifBlair. Plaintiffs further assert that defendants harvested the illegal sod and illegally sold or offered for sale sod from the harvest without restriction and without proper authority from Turfgrass or UGARF. Plaintiffs also assert that defendants sold or offered for sale TifBlair without proper labeling in violation of the PVPA.

Plaintiffs assert a cause of action for infringement of the PVPA and 7 U.S.C. § 2541(A) of the PVPA and seeks damages therefore. Plaintiffs also seeks an injunction pursuant to 7 U.S.C. § 2563 of the PVPA and damages for violation of the Lanham Act.[8] Under the Lanham Act plaintiffs asserts false marketing and unfair competition as authorized by § 43(a) of the Lanham Act based on plaintiff's allegations that defendants are selling and marketing TifBlair and using the federally registered trademark TifBlair owned by Turfgrass. Finally, plaintiffs seek treble damages and attorneys fees pursuant to 7 U.S.C. § 2564 and 2565 of the PVPA.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[9] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[10] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the

---

[8]

[9] Fed. R.Civ. P. 56(c).

[10] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

3

non-moving party.[11] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[12] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[13] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[14] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[15] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[16]

## LAW AND ANALYSIS

Plaintiffs have filed this lawsuit pursuant to 7 U.S.C. § 2541 (a) which provides as follows:

**§ 2541. Infringement of plant variety protection**

(a) Acts constituting infringement

Except as otherwise provided in this subchapter, it shall be an infringement of the rights of the owner of a protected variety to perform without authority, any of the following acts in the United States, or in commerce which can be regulated by Congress or affecting such commerce, prior to expiration of the right to plant variety

---

[11] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[12] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[13] Anderson, 477 U.S. at 249.

[14] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[15] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[16] Anderson, 477 U.S. at 249-50.

4

protection but after either the issue of the certificate or the distribution of a protected plant variety with the notice under section 2567 of this title:

(1) sell or market the protected variety, or offer it or expose it for sale, deliver it, ship it, consign it, exchange it, or solicit an offer to buy it, or any other transfer of title or possession of it;

(2) import the variety into, or export it from, the United States;

(3) sexually multiply, or propagate by a tuber or a part of a tuber, the variety as a step in marketing (for growing purposes) the variety:

(4) use the variety in producing (as distinguished from developing) a hybrid or different variety therefrom;

(5) use seed which had been marked "Unauthorized Propagation Prohibited" or "Unauthorized Seed Multiplication Prohibited" or progeny thereof to propagate the variety;

(6) dispense the variety to another, in a form which can be propagated, without notice as to being a protected variety under which it was received;

(7) condition the variety for the purpose of propagation, except to the extent that the conditioning is related to the activities permitted under section 2543 of this title;

(8) stock the variety for any of the purposes referred to in paragraphs (1) through (7);

(9) perform any of the foregoing acts even in instances in which the variety is multiplied other than sexually, except in pursuance of the valid United States plant patent; or

(10) instigate or actively induce performance of any of the foregoing acts. . . .

*Prescription*

Louisiana Turf maintains that the instant lawsuit must be dismissed because it is barred by the statute of limitations. 7 U.S.C.A. § 2566 provides the following regarding prescription:

**§ 2566 Time limitation on damages**

(a) No recovery shall be had for that part of any infringement committed more than six years (or known to the owner more than one year) prior to the filing of the complaint or counterclaim for infringement in the action.

5

The instant lawsuit was filed on August 27, 2010. Defendants argue that plaintiffs had knowledge that they were selling, offering to sell, and/or marketing TifBlair in violation of the PVPA as early as August 21, 2009 when plaintiff had an undercover investigator record a telephone conversation he made inquiring about the product. Defendants submit a transcript of that telephone conversation between a Louisiana Turf employee and the investigator. Defendants maintain that during the conversation, the employee agreed to sell the investigator two pallets of TifBlair on Monday morning, August 24, 2009. Defendants argue that this purported sale triggered the prescriptive period on August 21, 2009.

Plaintiffs argue that it had no knowledge that defendants were guilty of violations of the PVPA as a result of the August 21, 2009 telephone call. Plaintiffs submit the following colloquy of the transcribed telephone conversation:

ZW[17]: No, I want sod.

Jeff: Oh, you have to buy it from me. The only thing they [Patten Seed] sell is uh, seed. You know, that's the seed that we grow.

* * *

Jeff: Yea, yea. Naw, that's not a problem. We can sure sell you the sod. I was just going to let you look at them so you can see the pictures of what it looked like.

ZW: Oh, ok. So you ain't got nothing to do with them?

Jeff: No no, that's just the seed company that we buy the seed from, you know, it'll take you a year and a half to grow it from seed. But, I just figured they would have some pictures, of the, of that kind of grass.

* * *

ZW: Ok. So, you, you, this is your; I'm, I was just kinda confused about that uh, Patten[18]

---

[17] Plaintiffs' hired private investigator.

[18] Patten Seed Company is the exclusive authorized dealer of TifBlair centipede seed in the State of Louisiana.

6

     thing I, I didn't know if this was our company or what.

  Jeff: No, no. We're Northeast Louisiana Turf Farms.

Plaintiffs argue that because defendant mentioned the Patten Seed Company who is authorized to sell the TifBlair seed, this created confusion which could have been interpreted to mean that defendants' offer sell the TifBlair sod may have been legitimate and not an infringement.

The court has read the entire transcribed telephone conversation and concludes that it is clear that Jeff Nicolle offered to sell and/or market the protected TifBlair sod to the plaintiff. However, nothing in the transcript indicates that Mr. Nicolle had notice that the sod it offered to sell to the investigator was in fact a "protected variety." An accused infringer must have had notice that TifBlair is a protected variety.[19] "[B]ecause the PVPA imposes liability only if a protected variety is dispensed 'without notice,' by definition, the dispenser of the seed must have had notice that it received a protected variety." Additionally, "before liability attaches, the PVPA requires that the dispenser have failed to provide notice to the recipient of the dispensed seed that the seed was a protected variety." Thus, a PVPA violation has not occurred and infringement does not exist if the seller of the protected seed does not know that the seed or sod is a federally protected variety.

Defendants further maintain, that if the court does not find that the prescriptive period began on August 21, 2009, it should at the very least, start on August 26, 2009 because Plaintiffs had sufficient knowledge of the PVPA violation as of that date. Consequently, defendants argue that because the lawsuit was not filed until August 27, 2010, it was filed either six (6) days or one (1) day

---

[19] See Delta Pineland Co.v . Sinkers Corp., 177 F.3d 1343, 1355 (Fed. Cir. 1991). Syngenta Seeds, Inc. v. Delta Cotton Co-Operative, Inc., 457 F.3d 1269, 79 U.S.P.Q.2d 1576 (2006).

late, and therefore is prescribed.

Defendants submit as summary judgment evidence the Investigation Declaration prepared by the investigator. Defendants rely on the entire Declaration and direct the court to the following pertinent excerpt of the Declaration:

> On August 26, 2009, I called Northeast Louisiana Turf and talked to Jeffrey Nicolle and I asked about buying "centipede." I never mentioned TifBlair. He recommended TifBlair over St. Augustine. His price is $80.00 a pallet for 450 square feet. He stated that TifBlair is the best and that he sold TifBlair, and for me to go to Patten web site to look at TifBlair.

Defendants remark that the Patten website states that TifBlair is a U.S. protected variety which is protected from the unauthorized/unlicensed commercial propagation or transfer of the product to third parties for such propagation. Defendants argue that such is sufficient to establish the knowledge requirement under the PVPA because Patten is an authorized dealer of TifBlair and plaintiffs are aware of the fact that the distributor of their seed would have the required statutory label affixed to the packaging. In his Declaration, the investigator states that defendants purchased 30 - one (1) pound packages of the seed from Patten and that each package contains the appropriate PVPA notice. The investigator draws this conclusion based on his having seen the PVPA and Patent warnings against unauthorized propagation and commercial production printed on the packages he purchased. The court cannot rely on the investigator's knowledge and impute it to defendants with respect to defendants' knowledge and/or defendants having received these packages of seed in the exact same packaging with the exact same PVPA and Patent warnings.

Plaintiffs submit that the receipt given to their investigator when he purchased the TifBlair seed did not have a PVPA notice on it which raises doubt as to defendants' knowledge that it was selling a protected variety. Plaintiffs remark that it was not until the second investigation on May

12, 2010 that the investigator knew that a violation of the PVPA occurred based on the transcript of a recorded conversation between Mr. Nicolle and the investigator in which Mr. Nicolle states that the TifBlair grass was "protected."

Defendants also rely on another case involving the same plaintiff, <u>The Turfgrass Group, Inc., et al v. Carolina Fresh Farms, Inc.,</u> [20] wherein the court had to decide if the action was prescribed based on plaintiffs' knowledge of a PVPA violation. Even though the court denied that motion to dismiss, the court held that the earliest date for when plaintiff became aware of a possible PVPA violation was when an employee agreed to sell the investigator the TifBlair grass.

Plaintiffs remark that after the August 21, 2009 conversation, the investigator was still not sure if there was an infringement and believed that the TifBlair could have been a legitimate and non-infringing sod. Thus, on August 27, 2009, ZW made another call to defendants and learned that defendants did not have a legitimate business relationship with Patten. On August 28, 2009, ZW visited the Louisiana Turf Farms and purchased two pallets of TifBlair centipede sod from defendants and was told how to plant and treat the TifBlair. Plaintiffs argue that it was during this visit that defendants revealed that the TifBlair centipede seed being used on its sod farm had been purchased from Patten.[21][22]

---

[20] Civil Action No. 5:10-0849-JMC.

[21] Defendants' exhibit 2.

[22] Plaintiff's investigator (ZW) started a second, separate investigation on April 28, 2010 (nine months after the first investigation). Again, ZW called Louisiana Turf Farms and asked for TifBlair sod. The unknown male replied that they had TifBlair centipede. On May 12, 2010, ZW visited the farm and purchased the sod. During that visit, defendant, Jeff Nicolle acknowledged that the sod was TifBlair and that he knew it was "protected."

9

Based on the foregoing, the court finds that there is a genuine issue of material fact as to when plaintiffs had knowledge of a PVPA violation. Accordingly, to that extent the motion for summary judgment will be denied.

Plaintiffs argue that 27 U.S.C. § 2566 is not a complete bar to all damages based on all infringing activity, just that part outside the one year window of time. Plaintiffs rely on the language that "no recovery shall be had **for that part** of any infringement committed more than six years (or known to the owner more than one year) prior to the filing of the complaint or counterclaims for infringement in the action." Plaintiffs remark that defendants' interpretation of the statute[23] would be equivalent to allowing a lifetime of violations to infringers who were able to get by with some infringements for more than one year.

Plaintiffs submit that defendants infringed on plaintiffs' PVPA rights several times, specifically on August 28, 2009 and on May 12, 2010 both of which are within the one year requirement. Thus, defendants are still committing infringements within the one year statute of limitations. Plaintiffs argue that Congress would not have created a "loophole" for infringers to continue with a lifetime of infringement of the owner's PVPA rights. Defendants posit that Congress would not have intended to allow a plaintiff unlimited time to file suit after knowledge of an infringement. Defendants rely on <u>Turfgrass Grp., Inc., v. Carolina Fresh Farms, Inc.</u>[24] wherein the court noted that the claim would have been untimely had the plaintiffs filed suit a single (1) day late.

Plaintiffs argue that the statutory sections is not a complete bar to all damages, just that part outside the one year time period. The court agrees and finds that to the extent plaintiff had

---

[23] 7 U.S.C. § 2566.

[24] Civil Action No. 5:10-0849-JMC (D.S.C. 2013).

knowledge of a PVPA violation, only those damages known to the plaintiff more than one year prior to the filing of the complaint would be barred.

*Lanham Act*

Defendants maintain that any Lanham Act claims must be dismissed because there has been no showing that defendant used the federally registered trademark "TifBlair" in any sale, marketing or advertising. Plaintiff argues that liability may arise under 15 U.S.C. § 1125 even though no trademark is involved. The Statute provided in pertinent part the following:

> (1) Any person who, or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) It is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his goods or her goods, services, or commercial activities by another person, or
>
> (B) In commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[25]

Plaintiffs rely on <u>Ames Pub. Co. V. Walker-Davis Publications, Inc.</u>,[26] wherein the court held that:

> while the intent of the Lanham Act is to regulate commerce by making actionable the descriptive and misleading use of trademarks, it is also designed . . .'to protect persons engaged in such (interstate) commerce against unfair competition . . .' 15 U.S.C. § 1127, and accordingly the scope of Section 43(a) extends beyond the protection of trademarks.

---

[25] 415 U.S.C. § 1125.

[26] 372 F. Supp. 1 (E.D. Pa. 1974).

11

In Glenn v. Advertising Publications, Inc.,[27] the court held that:

> [t]hey [the courts] make it clear that Section 43(a) [of the Lanham Act] may be violated by a false designation, description or representation even though no trademark is involved. . . .
>
> For Section 43(a) of the Lanham Act creates a new 'Federal Statutory Tort, *sui generis*' and does not merely codify the common law principles of unfair competition.' . . .
>
> To sum up, I construe the statute broadly enough to include a false representation in a report, brochure or film which relates to a trade publication sold in interstate commerce and which was prepared and used for the purposes of securing advertising for that publication. The question remains whether there was a "false representation" within the meaning of the statute."[28]

Defendants have provided this court with no argument or authority to rebut plaintiffs' arguments. Furthermore, as to defendants' position that plaintiffs' claims are prescribed, for the reasons set forth above, the court finds that there is a genuine issue of material fact as to when plaintiffs had sufficient knowledge of a violation of the Lanham Act.[29] Accordingly, the court finds that the motion to dismiss plaintiffs' Lanham Act claims will be denied.

## CONCLUSION

Based on the forgoing, the court finds that there is a genuine issue of material fact as to Plaintiffs' knowledge of defendants' alleged PCPA violation. Therefore the court will deny defendants' motion for summary judgment. The court further finds that only those damages found

---

[27] 251 F.Supp. 889 (S.D.N.Y. 1966).

[28] The American Rolex Watch Corp. v. Jack Laufer & Jan Voort, Inc., 176 F.Supp. 858 (E.D. N.Y. 1959); Zandelin v. Maxwell Bentley Mfg. Co., 197 F.Supp. 608 (S.D.N.Y. 1961).

[29] The court notes that defendants failed to fully address the prescriptive issue with respect to the Lanham Act claims and that said claims may very well not be analogous to those under the PVPA.

to be outside the one year prescriptive period will be barred by prescription.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 26th day of September, 2013.

                                                                       JAMES T. TRIMBLE, JR.
                                                                       UNITED STATES DISTRICT JUDGE