UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **THE TURFGRASS GROUP, INC., ET AL.** | * | **CIVIL ACTION NO. 10-1354** |
| **VERSUS** | * | **JUDGE JAMES T. TRIMBLE, JR.** |
| **NORTHEAST LOUISIANA TURF FARMS, LLC., ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

<u>**MEMORANDUM ORDER**</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for sanctions [doc. # 32] filed by Defendants Northeast Louisiana Turf Farms, LLC and Jeffrey Clifton Nicolle (collectively, "NELA Turf"). For reasons stated below, the motion is DENIED.[1]

<u>**Background**</u>

On August 27, 2010, Plaintiffs, The Turfgrass Group, Inc. ("TTG") and the University of Georgia Research Foundation, Inc. ("UGARF") filed the instant complaint against NELA Turf under the Plant Variety Protection Act, 7 U.S.C. § 2321, et seq., and the Lanham Act, 15 U.S.C. § 1125(a). Plaintiffs allege that on June 14, 2001, the U.S. Secretary of Agriculture issued Plant Variety Protection Certificate Number 9600255 for the centipede grass variety known as TifBlair. (Compl., ¶ 14). UGARF subsequently received an exclusive license to make, have made, use, sell, and offer for sale TifBlair. *Id.*, ¶ 15. UGARF later issued an exclusive seed

---

[1] As this motion is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and LR 74.1(W).

supply and sublicense agreement to TTG for Plant Variety Protection Certificate Number 9600255, i.e., TifBlair. *Id*., ¶ 16.  Plaintiffs further allege that by virtue of the PVPA Certificate and the licenses, TifBlair can be grown, offered for sale, marketed or sold only by or with TTG's permission in accordance with the Plant Variety Protection Act.  *Id*., ¶ 19.  Plaintiffs contend that NELA Turf violated various provisions of the PVPA and the Lanham Act by marketing and selling TifBlair without authorization, licensing, requisite labeling, etc.

Plaintiffs discovered NELA Turf's alleged unlawful practices through the efforts of an undercover investigator, Zelotis Wofford, Jr., who worked exclusively at the behest of the Nolan Law Group, PLLC.  (Pl. Opp. Memo., pg. 8).  On various dates in 2009-2010, Wofford posed as a customer and questioned personnel at NELA Turf concerning the purchase of centipede grass, and the TifBlair variety in particular.  *See* M/Sanctions, pgs. 2-4.  Wofford surreptitiously captured the encounters via audio recording.  *Id*.

On May 2, 2013, NELA Turf filed the instant motion for sanctions which seeks to exclude from evidence the surveillance tapes and testimony of Zelotis Wofford.  Plaintiffs filed their opposition to the motion for sanctions on August 12, 2013.  On October 15, 2013, the undersigned issued an order requiring the parties to submit memoranda addressing

1) whether Zelotis Wofford, Jr., was required to be registered and licensed pursuant to the [Louisiana Private Investigators Law] for purposes of the evidence obtained in this case; and

2) if so, and assuming that Wofford was not so registered or licensed, whether the proper remedy for violation of the law is exclusion of all evidence obtained in violation of the law, and/or imposition of sanctions (including, but not limited to disqualification) against Plaintiffs' counsel and his firm for potential violations of Rules 3.3 and 8.4(a)-(d) of the Louisiana Rules of Professional Conduct.

(Oct. 15, 2013, Order [doc. # 69]).

The parties filed their responses complied on October 29, 2013.  The matter is now before the

2

court.

## Analysis

Although not clearly delineated in its motion, NELA Turf contends that Plaintiffs' counsel, Duff Nolan, violated various ethical rules because 1) he employed a private investigator to surreptitiously record conversations with NELA Turf personnel; 2) the private investigator relied on deception and artifice to obtain evidence from NELA Turf personnel; and 3) he violated Louisiana law by using a private investigator who was not licensed or registered in Louisiana. As a result of these alleged ethical lapses, NELA Turf petitions the court to sanction Plaintiffs by precluding their private investigator from testifying at the trial in this matter, and by requiring the return of all pertinent recordings made by the private investigator.

a)     Law

In the Fifth Circuit, "[a] motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court." *In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992). Ethical canons relevant to the inquiry include (1) the local rules for the Western District of Louisiana; (2) the American Bar Association's ("ABA") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001). In addition, the Western District of Louisiana specifically adopted the Rules of Professional Conduct of the Louisiana State Bar Association. *Id*. (citing LR 83.2.4W).

The federal courts possess inherent authority to discipline an attorney. *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 340 (5th Cir. 1993) (citations omitted). Courts also possess an inherent power to prevent *any* unprofessional conduct by attorneys who appear before them.

*Jackson v. U.S.*, 881 F.2d 707, 710 (9th Cir 1989). The courts' inherent powers include the "authority to impose reasonable and appropriate sanctions on errant lawyers practicing before the court." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996) (citation omitted). Furthermore, "once a district court has admitted an attorney to practice before it *pro hac vice,* it may revoke that attorney's admission if, after following the proper disciplinary procedure, it concludes that the attorney violated a clearly identifiable ethical rule." *United States v. Nolen*, 472 F.3d 362, 375 (5th Cir. 2006). Not only may the court impose necessary sanctions against the pro hac vice attorney directly, but sanctions also may be imposed through "the bar of which the pro hac vice lawyer is a member, as well as through the local lawyer with whom he is associated." *Sanders v. Russell*, 401 F.2d 241, 246 (5th Cir. 1968). However, "the threshold for the use of inherent power sanctions is high." *Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998) (citation and internal quotation marks omitted). The sanction imposed must be "the least possible power adequate to the end proposed." *Natural Gas Pipeline Co. of Am., supra* (citations and internal quotation marks omitted).

In addition, "to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith.'" *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) (citations omitted). Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (citing *inter alia*, BLACK'S LAW DICTIONARY 139 (6th ed.1990)). Sanctions are not warranted against an attorney who acts on an incorrect interpretation of the law, so long as he had a reasonable argument for his interpretation of the law that was motivated by a proper purpose. *See Chaves, supra*.

b) <u>Discussion</u>

The instant motion was inspired by a motion for sanctions filed by the defendant(s) in a similar case against these same Plaintiffs: *The Turfgrass Group Incorporated v. Carolina Fresh Farms, LLC*, Civil Action No. 10-0849 (D. S.C.). In the *Carolina Fresh Farms*, case, the South Carolina federal court imposed sanctions against Plaintiffs on the basis that, in South Carolina, there is a blanket prohibition against attorneys clandestinely recording conversations, even if the attorney (or his agent) is a party to the conversation. *Id*., Minutes from May 3, 2011, Hearing [Entry No. 92].

Recently, however, the Fifth Circuit remarked that in 2001, the ABA issued Formal Opinion 01-422, in which it expressly concluded that a surreptitious recording by a lawyer without the other party's consent is not, by itself, unethical if it is otherwise lawful in the particular jurisdiction. *Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488, 495 (5th Cir. 2013) (citing *inter alia*, ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 01–422 (2001)). Because Louisiana is a "one-party consent" state,[2] and in the absence of any indication that Louisiana would view such recordings as "unethical" despite the ABA's current position on the issue, the Fifth Circuit declined to conclude that one-sided recordings (albeit, made by a layperson), were obtained unethically. *Id*. The foregoing reasoning is expansive enough to compel the same result here, notwithstanding that the surreptitious recording is attributable to counsel via his employee. *See* LOUISIANA RULES OF PROF. CONDUCT, RULE 5.3.

Citing *Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 347 F.3d 693, 696 (8th Cir. 2003),

---

[2] I.e., it is not unlawful for a person not acting under color of law to intercept an oral communication where such person is a party to the communication. *Marceaux, supra* (citing La. R.S. § 15:1303(C)(4)).

Defendants further argue that Plaintiffs' counsel violated ABA Model Rule 8.4(c) by employing an undercover agent or tester to visit Defendants' place of business to obtain evidence against NELA Turf.  In *Midwest Motor Sports*, however, the evidence was obtained *after* suit had filed, and thus, *after* the parties were represented by counsel.  See *Midwest Motor Sports, supra*.  In other words, the attorney-directed clandestine discovery operation transgressed ABA Model Rule 4.2.  *Id*.  Although the court determined that the attorney's conduct also violated Rule 8.4(c)'s prohibition against "conduct involving dishonesty, fraud, deceit or misrepresentation," it noted, in this regard, that the attorney resorted to self-help remedies when the information could have been obtained through the use of formal discovery techniques such as a motion to compel.  *Id*.

Here, in contrast, Plaintiffs' counsel, Mr. Nolan, stresses that the use of an undercover investigator or tester is essential to uncover evidence of trademark and patent infringement *before* suit is filed.  In *Carolina Fresh Farms*, Nolan informed the court that his investigator had tested approximately 1500 to 1600 entities for compliance, but obtained evidence that resulted in only about 30 lawsuits.  *Carolina Fresh Farms, supra*; Transcript of May 3, 2011, Hearing, pg. 21 [Entry No. 92].  In other words, the undercover investigations were only performed for proper purposes, and only uncovered evidence to support a cause of action in a relatively small number of instances.

The court further observes that "[t]he prevailing understanding in the legal profession is that a public or private lawyer's use of an undercover investigator to detect ongoing violations of the law is not ethically proscribed, especially where it would be difficult to discover the violations by other means." *Cartier, a division of Richemont N. Am., Inc. v. Symbolix, Inc.*, 386 F. Supp. 2d 354, 362 (S.D. N.Y. 2005) (citing *Gidatex S.r.L. v. Campaniello Imports, Ltd.,* 82 F.Supp.2d 119, 123 (S.D. N.Y. 1999); *Apple Corps. v. International Collectors Society,* 15 F.

6

Supp.2d 456, 475 (D. N.J. 1998)).[3] In the absence of any indication that NELA Turf was represented by counsel at the time of the investigation (or if it was, that Mr. Nolan was aware of that), and in light of the prevailing view that such pre-suit investigations are not unethical, the undersigned cannot conclude that Mr. Nolan knowingly violated applicable ethical norms by employing an undercover investigator to determine whether NELA Turf had violated protected patent and trademark rights.

Nonetheless, the undersigned *does* find that Mr. Nolan and his firm, Nolan Law Group, PLLC ("NLG"), violated Louisiana law by employing a private investigator who was not registered in this state. Under Louisiana's Private Investigators Law ("PIL"), it is unlawful for any person knowingly to "[e]mploy an individual to perform the duties of a private investigator who is not the holder of a valid registration card." La. R. S. § 37:3520(A)(2). Nolan does not contend that his private investigator, Zelotis Wofford, Jr., held a valid registration card during the investigation at issue. Instead, he contends that his firm, and its investigator, were not required to be registered or licensed in Louisiana because, despite NLG and Wofford's prior efforts to designate Wofford as an *independent contractor*,[4] research confirms that Louisiana law actually considers Wofford to be an *employee* of NLG. *See* April 26, 2013, E-Mail from Duff Nolan to

---

[3] *See also* David B. Isbell & Lucantonia N. Salvi, ETHICAL RESPONSIBILITY OF LAWYERS FOR DECEPTION BY UNDERCOVER INVESTIGATORS AND DISCRIMINATION TESTERS; AN ANALYSIS OF THE PROVISIONS PROHIBITING MISREPRESENTATION UNDER THE MODEL RULES OF PROFESSIONAL CONDUCT, 8 Geo. J. Legal Ethics 791, 816 (1995). Mr. Isbell is the former chair of the ABA Standing Committee on Ethics and Professional Responsibility.

[4] *See* Dec. 15, 2006, Contract for Investigation Services between Zelotis Wofford and NLG; Pl. Memo. [doc. # 71], Exh. A.

Travis Holley, M/Sanctions, Exh. 4; Pl. Opp. Memo., pgs. 5, 8.[5]

In this court's October 15, 2013, Order the undersigned took judicial notice of the fact that in *Carolina Fresh Farms*, Mr. Nolan represented and argued to the court that NLG's investigator, Zelotis Wofford, Jr. was *not* an employee of the firm, but an independent contractor. (Oct. 15, 2013, Order [doc. # 68], and attachments thereto). In its response to the court's order, NLG

> admit[ted] that the belief from 2006 to 2011 and the intention prior to the hearing in South Carolina and a short while thereafter was that Wofford had an independent contractor relationship with NLG, however, it is clear . . . that the relationship was not one of an independent contractor, but is one of an employer-employee.

(Pl. Reply Memo., pg. 11 [doc. # 71]).

NLG added that it did not discover that Wofford actually was its employee under Louisiana law until 2011 when it conducted exhaustive research on the issue. *Id*., pgs. 3-4.[6]

Nonetheless, even if Mr. Wofford were an employee of NLG, the claimed exemption also requires that the employee perform "investigative work in connection with the affairs of such employer exclusively." La. R. S. § 37:3503(b)(viii). The phrase, "affairs of such employer exclusively," cannot be interpreted to include matters that the employer completes on behalf of other clients. If so, then the exception would swallow the proverbial rule because then all private

---

[5] The PIL exempts the licensing requirement for "[a] person or corporation which employs persons who do private investigative work in connection *with the affairs of such employer exclusively* and who have an employer-employee relationship with such employer." La. R. S. § 37:3503(b)(viii) (emphasis added).

[6] It is apparent to the court that Mr. Nolan and NLG are treading a fine line. When it suits their purpose, Mr. Wofford is deemed an independent contractor; when it no longer suits their purpose, they discover that Wofford is an employee. The court will credit Mr. Nolan's proffered epiphany. However, as detailed below, he was obliged to pre-disclose to the court his prior, inconsistent representations.

investigator firms that employ private investigators would fall under the exception. Moreover, there is a separate exemption that specifically applies to employees of attorneys who are licensed to practice in Louisiana. La. R. S. § 37:3503(b)(iv). Mr. Nolan, however, is not licensed in Louisiana.

Accordingly, the court finds that Nolan and the NLG violated Louisiana's PIL by employing an unregistered person, Wofford, to conduct a private investigation of NELA Turf. However, there is no indication that Mr. Nolan knowingly or intentionally violated the law. The court did not uncover any case law interpreting or applying the PIL. Moreover, Nolan and NLG's interpretation of the exemption is not patently unreasonable. Thus, the court cannot conclude that Nolan acted in bad faith, and sanctions against counsel are not warranted.

Moreover, the court is not persuaded that precluding Plaintiffs from introducing at trial the illegally obtained evidence is the proper remedy. The PIL itself specifies the remedy for any violation of its provisions: fines and imprisonment. La. Rev. Stat. Ann. § 37:3521. It does not further mandate the suppression or exclusion of the illegally obtained evidence.

In addition, the Fifth Circuit has remarked that "[i]n the complex and turbulent history of the [exclusionary] rule, the [Supreme] Court never has applied it to exclude evidence from a civil proceeding, federal or state." *Park v. El Paso Bd. of Realtors*, 764 F.2d 1053, 1065-66 (5th Cir. 1985) (citation omitted). In *Park*, the court upheld the district court's decision to admit into evidence taped telephone conversations initiated by plaintiffs wherein they posed as prospective sellers to elicit evidence against defendants – an artifice that violated the local telephone tariff for recorded calls. *Id*. The court explained that the public interest in deterrence did not outweigh the benefit of providing the fact finder with all relevant evidence. *Id*. Similarly, in a Texas traffic camera case, the Fifth Circuit upheld the district court's decision not to exclude evidence from

9

the cameras, even though the photographs were obtained without the requisite license under Texas law. *Bell v. Am. Traffic Solutions, Inc.*, 371 F. App'x 488 (5th Cir. 2010).

In short, movants have not demonstrated that, under Louisiana (or federal) law, the inadvertent breach of the PIL by Plaintiffs' counsel requires suppression of the evidence obtained by the private investigator.

Although the court does not find that sanctions are warranted on the several grounds raised by Defendants, the court finds that it was disingenuous for Mr. Nolan to fail to disclose or acknowledge his prior, inconsistent arguments, evidence, and personal belief regarding Wofford's employment status that he advanced before another tribunal – until *after* the inconsistency was raised by this court.[7] At the very least, the undersigned finds that Mr. Nolan's conduct violated the spirit of Rule 3.3(a)(1) of the Louisiana Rules of Professional Conduct, as adopted by the Western District of Louisiana. LR 83.2.4W.[8] In so doing, he acted in bad faith. *See Crowe*, 151 F.3d at 236-237 (attorney misrepresentations constitute bad faith).

When a federal court's disciplinary rules fail to provide guidance regarding the appropriate sanction to be imposed for an attorney's transgressions, the court appropriately looks to the ABA's Standards for Imposing Lawyer Sanctions (the "ABA Standards"). *In Re Sealed Appellant*, 194 F.3d 666, 673 (5th Cir. 1999). "In imposing a sanction after a finding of misconduct, a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or

---

[7] In counsel's defense, the court acknowledges that the alleged violation of the PIL was not the principal thrust of Defendants' motion.

[8] Rule 3.3(a)(1) states that "[a] lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

mitigating factors." *Id*. (citing *inter alia*, ABA Standards, 3.0).

Applying the above considerations here, the undersigned finds that the least severe sanction which may be imposed against Mr. Nolan is to admonish him for his lack of candor to this tribunal to exhort him to avoid such recurrences in his future representations to this, and other courts, and to caution him that any such violation in the future would be grounds for more severe sanctions.[9]

### Conclusion

For the reasons set forth above,

The motion for sanctions [doc. # 32] filed by Defendants Northeast Louisiana Turf Farms, LLC and Jeffrey Clifton Nicolle is hereby DENIED.

THUS DONE AND SIGNED at Monroe, Louisiana, this 20th day of November 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[9] Mr. Nolan's conduct does not provide an additional basis for exclusion of evidence. *See Plan Comm. in the Driggs Reorganization Case v. Driggs*, 217 B.R. 67, 72 (D. Md. 1998) ("the appropriate remedy for any ethical violation that occurred would be disciplinary action against [the attorney], not . . . suppression of evidence. . . ."). Further, "[e]xclusionary remedies are strong medicine, normally reserved for constitutional violations . . . ." *U.S. v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989).
There is no indication that Plaintiffs' local counsel, Mr. Sartin, was aware of the extent of Mr. Nolan's prior representations to the South Carolina court.