RECEIVED
IN LAKE CHARLES, LA.

SEP 30 2014

TONY R. MOORE, CLERK
BY_____
              DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| THE TURFGRASS GROUP, INC. AND UNIVERSITY OF GEORGIA RESEARCH FOUNDATION, INC. | : | DOCKET NO. 3:10-1354 |
| VS. | : | JUDGE TRIMBLE |
| NORTHEAST LOUISIANA TURF FARMS, LLC AND JEFFREY CLIFTON NICOLLE, INDIVIDUALLY | : | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the court is "Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability" (R. #89) wherein plaintiffs, The Turfgrass Group, Inc. ("Turfgrass") and the University of Georgia Research Foundation, Inc. ("UGRF") seek judgment in their favor and against defendants. Plaintiffs maintain that there is no genuine issue of material facts in dispute concerning defendants' liability for their infringement of plaintiffs' proprietary variety of turfgrass. Plaintiffs assert that defendants infringed upon plaintiffs' federally protected intellectual property rights in violation of the Plant Variety Protection Act ("PVPA"), 7 U.S.C. § 2541(a)(1), (a)(3), (a)(5), (a)(6), (a)(7), and (a)(8) and the Lanham Act, 15 U.S.C.A. § 1125.  Plaintiffs argue that defendants have no legal or equitable defenses available, and request that the court (1) enter a judgment on the issue of liability, (2) issue a permanent injunction forever prohibiting defendants from infringing on plaintiffs' proprietary turfgrass without express written permission from plaintiffs (3) prohibit defendants' use of Turfgrass trademarked named *"TifBlair"* in violation of the Lanham Act and (4) enjoin defendants from making false designations of plaintiffs' product. The trial of this matter is currently

set for November 17, 2014. Plaintiffs urge the court to keep that trial date for damages if we grant the motion for summary judgment as to liability.

## FACTUAL STATEMENT

Plaintiffs hold the rights to a federally protected centipede grass variety known as TifBlair.[1] In this lawsuit, plaintiffs maintain that defendants through certain acts discussed below, infringed upon plaintiffs' intellectual property rights under the Plant Variety Protection Act ("PVPA") and the Lanham Act. Plaintiffs assert that defendants have profited by these intentional acts and caused plaintiffs to suffer damages and irreparable harm.

Defendants purchased TifBlair centipede seed; the packaging included the statutory PVPA notice which advised defendants that as a purchaser, unauthorized propagation was prohibited and the seed was to be used solely for the home turf market.[2] Plaintiffs maintain that there is no factual dispute that without authority, defendants, Jeffrey Nicolle, individually and Northeast Louisiana Turf Farms, LLC sold, offered for sale, marketed, delivered, shipped, sexually multiplied, dispensed and stocked plaintiffs' TifBlair centipede. Plaintiffs contend that Defendants planted TifBlair seed and diverted the sod grown from it to the commercial market to third parties in violation of the PVPA.[3] Furthermore, when defendants sold the TifBlair centipede sod, they did not affix the required PVPA notice as is required by federal law.[4] Plaintiffs assert that defendants had notice and were aware that

---

[1] Plaintiffs' exhibit A. UGRF holds a license for Plant Variety Certificate Number 9600255; UGRF issue to The Turfgrass Group, Inc. a Seed-Supply and Sub-License Agreement for TifBlair.

[2] Plaintiffs' exhibits E, R, S and V.

[3] Plaintiffs' exhibit F.

[4] Notice must be attached to each sale. Plaintiffs' exhibits G, H and U.

TifBlair was protected by the PVPA, thus, it was improper for defendants to sell it.[5]

Plaintiffs also assert that defendants advertised on their business cards that they sold TifBlair in violation of 15 U.S.C.A § 1125.[6] Finally, plaintiffs assert that defendants represented orally that they sold TifBlair and the sales receipt noted that the turfgrass sold was TifBlair.[7]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[8] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[9]  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[10] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[11] Once the movant makes this showing, the burden shifts to the non-moving

---

[5] Plaintiffs' exhibit K.

[6] Plaintiffs' exhibit Q.

[7] Plaintiffs' exhibit F and H.

[8]  Fed. R.Civ. P. 56(c).

[9]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[10] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[11] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

party to set forth specific facts showing that there is a genuine issue for trial.[12]  The burden requires

more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must

demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material

fact or law.[13]  There is no genuine issue of material fact if, viewing the evidence in the light most

favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[14]

If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted."[15]

## LAW AND ANALYSIS

Pursuant to 7 U.S.C. § 2541(a), plaintiffs have the exclusive right to sell, market and

distribute TifBlair. 7 U.S.C. § 2541(a) identifies acts constituting infringements of a protected

variety as follows:

> (1) sell or market the protected variety, or offer it or expose it for sale, deliver
> it, ship it, consign it, exchange it, or solicit an offer to buy it, or any other transfer of
> title or possession of it;
> (2) import the variety into, or export it from, the United States:
> (3) sexually multiply, or propagate by a tuber or a part of a tuber, the variety
> as a step in marketing (for growing purposes) the variety;
> (4) use the variety in producing (as distinguished from developing) a hybrid
> or different variety therefrom;
> (5) use seed which had been marked "Unauthorized Propagation Prohibited"
> or "Unauthorized Seed Multiplication Prohibited" or progeny thereof to propagate
> the variety;
> (6) dispense the variety to another, in a form which can be propagated,
> without notice as to being a protected variety under which it was received;

---

[12] Anderson, 477 U.S.  at 249.

[13]  Celotex Corp. v.  Catrett, 477 U.S. 317, 324 (1986).

[14]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[15]  Anderson, 477 U.S. at 249-50.

(7) condition the variety for the purpose of propagation, except to the extent that the conditioning is related to the activities permitted under section 2543 of this title;

        (8) stock the variety for any of the purposes referred to in paragraphs (1) and (7);

        (9) perform any of the foregoing acts even in instances in which the variety is multiplied other than sexually, except in pursuance of a valid United States plant patent;

        (10) instigate or actively induce performance of any of the foregoing acts.

The PVPA imposes liability if a protected variety is dispensed "without notice;" the dispenser (defendants) of the seed must have received notice that the TifBlair seed it purchased was a protected variety, that unauthorized propagation or multiplication of the seed was prohibited, and that use of the seed by the purchaser was authorized only for purposes of the home turf market.[16]. Plaintiffs have presented summary judgment evidence that each package/box of TifBlair seed it sold to defendants had the requisite notice. This is not disputed.

Additionally, "before liability attaches, the PVPA requires that the dispenser failed to provide notice to the recipient of the dispensed seed that the seed was a protected variety." In _Sygenta Seeds, Inv. v. Delta Cotton Co-Operative, Inc.,_[17] the court held that there were four components for imposing liability for dispensing a protected variety: (1) dispensation of a protected variety, (2) in a propagatable form, (3) without the notice that it is a protected variety, and (4) under which it was received by the dispenser with notice printed on container."[18]

In their motion, plaintiffs maintain that there is no genuine issue of material fact that defendants are liable for violations of the PVPA and the Lanham Act. Plaintiffs have submitted

---

[16] Plaintiffs' exhibits C, E and K.

[17] 457 F.3d 1269, 79 U.S.P.Q.2d 1576 (2006).

[18] _Id.,_ 7 U.S.C. § 2541 (a)(6).

summary judgment evidence that defendants purchased at a minimum,[19] 30 pounds of TifBlair seed for reproductive purposes in violation of 7 U.S.C. § § 2541 (a)(1), (a)(3), (a)(5), (a)(6), (a)(7) and (a)(8).

Plaintiffs submit as summary judgment evidence the TifBlair PVPA Certificate,[20] the License Agreement,[21] the TifBlair trademark,[22] and the Notice that TifBlair is a protected variety.[23] Plaintiffs further submit the transcript of their private investigator, Zelotis Wofford ("ZW"), and Jeffrey Nicolle when ZW visited the NLTF on August 28, 2009.[24] The transcript reveals that Nicolle sold two pallets of sod centipede grass to the private investigator. In that transcript, Nicolle identifies the sod sold to ZW as TifBlair.[25] He also states that he has about 100 acres of TifBlair planted. Nicolle states that he originally planted the seed (12-15 pounds per acre) using a drill with about 7 inches of spacing, but thereafter, he removed the TifBlair sod and left strips for regrowth.[26] Nicolle stated that he purchased the seed in 30 pound boxes at cost from his family's seed and feed store, Farm Supply Center ("FSC"). In the transcript, Nicolle specifically stated that he had never dealt with "common" centipede, and that he only had TifBlair.

---

[19] Plaintiffs have also produced evidence to suggest that defendants purchased additional and larger quantities of TifBlair seed from Nicolle's step-father's feed and seed store, FSC.

[20] Plaintiffs' exhibit A.

[21] Plaintiffs' exhibit B.

[22] Plaintiffs' exhibit D.

[23] Plaintiffs' exhibits C and E.

[24] Plaintiffs' exhibit F.

[25] Id.

[26] Id.

Plaintiffs also submit a receipt for 2 pallets of TifBlair Centipede ZW purchased on August 28, 2009 for $160 from Jeff Nicolle.[27] Plaintiffs submit a transcript of a telephone conversation from November 30, 2009 with Jeff Nicolle and ZW.[28] In that conversation, Jeff again informs ZW that the centipede he sells is TifBlair and that he has about 200 acres of the TifBlair sod.[29] Plaintiffs submit another transcript from a May 12, 2010 visit to NLTF which transcribes a conversation between plaintiffs' private investigator, ZW and Jeffrey Nicolle.[30] During that visit, Nicolle again identifies that the type of centipede he sells is TifBlair. Nicolle again states that the only centipede he sells is TifBlair.[31] Nicolle also reiterates that he bought one box of TifBlair which contained 30 packages of seed to plant his farm. In that conversation, Nicolle also confirms that TifBlair is a protected variety of seed.[32] During that visit defendants sold two pallets of sod represented as TifBlair.

---

[27] Plaintiffs' exhibit H.

[28] Plaintiffs' exhibit I.

[29] Id.

[30] Plaintiffs' exhibit K.

[31] Id.

[32] Id.

Plaintiffs submit as summary judgment evidence a business card of NLTF which states the following;

Northeast Louisiana Turf Farms offers:

- TifBlair Centipede
- Raleigh St. Augustine

Call for current prices and availability

Defendants have submitted summary judgment evidence to create a genuine issue of material fact for trial. First, defendants rely on defendant, Jeff Nicolle's deposition testimony wherein he testified that the thirty pounds of TifBlair he purchased from FSC was to plant in the yard of Joseph Roan.[33] Defendants also submit the deposition testimony of Mr. Roan wherein he testified that he hired Nicolle to "plant some centipede seed in my lawn."[34] Mr. Roan's yard is approximately one and a half (1 ½) to two (2) acres. Defendants further rely on ZW's deposition wherein he testified that he asked Nicolle to write TifBlair on the receipt. Defendants remark that the receipt given to ZW for the May 10, 2010 sod sold does not refer to the centipede grass as TifBlair, only that it is centipede grass.

Defendants challenge the aforementioned business card that plaintiffs have submitted as summary judgment evidence. Defendants deny that this particular business card belongs to them. To support their position, defendants submit their "actual" business card which was produced in response to a subpoena. Defendants complain that plaintiffs fail to identify who produced the alleged phony business card. Defendants contend that their business card was printed by Parish Printers in

---

[33] Defendants' exhibit 1.

[34] Defendants' exhibit 2.

8

Bastrop, Louisisna. Defendants submit summary judgment evidence in the form of an affidavit attested to by Mike Lockwood.[35] Mr. Lockwood is an employee of Parish Printers and was in charge of responding to plaintiffs' subpoena. In his affidavit, Mr. Lockwood states that Parish Printers did not print the business card plaintiffs submitted, nor did he provide this particular business card in response to plaintiffs' subpoena. Thus, defendants deny the authenticity of the business card plaintiffs rely on to allege that defendants advertised TifBlair centipede grass for sale. Defendants maintain that this business card is fraudulent and that any card generated by anyone other than Parish Printers is fraudulent.

Defendants assert that there is no other evidence that they purchased any other TifBlair seed, nor any evidence that they purchased enough seed to plant the entire farm with TifBlair centipede. Each package of seed instructs that one pound of seed plants 2,000 to 4,000 square feet.[36] There are 43,560 square feet in an acre. Thus, defendants argue that the amount of seed purchased was the requisite amount for planting Mr. Roan's yard based on the planting rate per square foot listed on the seed packaging.

Defendants further rely on Nicolle's deposition wherein he testified that he lied to ZW about the TifBlair seed for the sole purpose of making a sale.[37] Defendants also submit the affidavit of Chad Lawhon,[38] a truck driver for NLTF, who states that he has never hauled TifBlair Centipede for NLTF, and that if NLTF had grown, sold or distributed TifBlair on the farm, he would have known

---

[35] Defendants' exhibit 6.

[36] Defendants' exhibit 3.

[37] Defendants' exhibit 8.

[38] Defendants' exhibit 9.

about it. Lawhon further states that he has hauled only common centipede sod. Lawhon declares that he was present when NLTF planted 30 pounds of TifBlair seed on Mr. Roans' property. Thus, defendants argue that without any further evidence of defendants purchasing other TifBlair seed, plaintiffs cannot prove that defendants planted TifBlair in violation of the PVPA. In other words, defendants' position is that they have never grown TifBlair centipede grass on their farm, and that all of Nicolle's conversations with ZW were completely false for the sole purpose of selling four (4) pallets of sod.  Defendants remark that ZW induced Nicolle to sell him TifBlair centipede and that neither he nor NLTF has ever grown TifBlair.

7 U.S.C.A. § 2561 states, "if a variety is sold under the name of a variety shown in a certificate, there is a prima facie presumption that it is the same variety."  Defendants admit that it sold a total of four pallets to ZW and represented it to be TifBlair. Defendants suggest that the presumption under § 2561 of the PVPA should attach only to the four (4) pallets of sod that Nicolle sold and represented as TifBlair to ZW. Defendants assert that there were never any tests performed to determine if the sod sold was in fact TifBlair or if the sod planted on NLTF was TifBlair. Furthermore, defendants submit that plaintiffs have failed to provide evidence to demonstrate that NLTF was selling TifBlair to any other customers.

Plaintiffs maintain that defendants have admitted that they have violated the PVPA by planting the TifBlair seed in Mr. Roan's yard and also by failing to provide the above-mentioned requisite notice to Mr. Roan.  The court agrees that there is no genuine issue of material fact for trial that the sale and planting of the TifBlair for Mr. Roan is a violation of the PVPA.

Plaintiffs argue that there is evidence[39] that defendants actually purchased more than 30 pounds of TifBlair seed to challenge defendants' position that plaintiffs have no evidence that defendants purchased enough seed to plant the farm as suggested by plaintiffs. Plaintiffs suggest that the BWI invoices show that FSC purchased as special orders from April 2008 until April 2010, 630 pounds of TifBlair at an approximate cost of $11,370.66.

Plaintiffs remind the court of Nicolle's repeated declarations in both face to face conversations as well as phone conversations with ZW that the only centipede grass he grew and sold was TifBlair.

To rebut defendants' complaint that plaintiffs failed to provide which subpoena it obtained the above-mentioned business card, plaintiffs note that The Fourth Supplement to Plaintiffs Initial Disclosures (The Fourth Supplement to Exhibit B[40]) clearly stated that the business card, (Bates number TTG/NELT 4-00074 and TTG/NELT 4-00075, Doc. 89-22) was received in response to the subpoena of Parish Printers. Plaintiffs remark that Nicolle denies that the business card is his and further insinuates that such card is a fraud. Plaintiffs submit the Affidavit of Nick Nolan (hired by the Nolan Law Group to serve subpoenas in this action) which establishes that even though Parish Printers did not print said business card, the card was provided to Parish Printers by Nicolle for an example to use in printing new business cards for defendants.[41]

Plaintiffs further challenge the affidavit of Chad Lawhon, the truck driver who attests that

---

[39] Such evidence includes Nicolle's discussions with ZW, David Norwood Pipes (Nicolle's step-father) deposition testimony (Exhibit B), David Lane Pipes (a special order salesman at FSC) deposition testimony (Exhibit C) and BWI invoices (Exhibit D).

[40] Plaintiffs' exhibit E.

[41] Plaintiffs' exhibit F.

defendants have never grown nor sold TifBlair sod. Plaintiffs contend that Lawhon, who is not an owner or a manager and is not involved in day to day sales, would not have personal knowledge of what is being sold on the farm.

While the court is very suspect of Nicolle and Lawhon's testimony and/or declarations, we cannot grant summary judgment at this stage of the proceeding without making a credibility determination. We find that summary judgment is proper as to the sale and planting of TifBlair in Mr. Roan's yard and failing to provide adequate notice to Mr. Roan. However, because Nicolle's testimony is that he lied about the type of centipede he sold just to make a sale, and Mr. Lawhon denies that NLTF has ever sold or grown TifBlair, there is a genuine issue of fact which will be determined at the trial of this matter. Accordingly, there is a genuine issue of material fact for trial as to whether or not defendants violated the PVPA by reproducing and selling TifBlair to other third parties.

*The Lanham Act*

Plaintiffs also maintain that defendants violated 15 U.S.C.A. § 1125(a) of the Lanham Act which provides in pertinent part the following:

> (1) Any person who, in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
> (A) It is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his goods or her goods, services, or commercial activities by another person, or
> (B) In commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities shall be liable in a civil action by any person who believes that he or she is or is likely to be damages by such act.

Plaintiffs have submitted summary judgment evidence establishing that defendants made a false designation of origin, false or misleading representation or description of fact in order to deceive as to the affiliation or connection of the origin or approval of the TifBlair. Defendants failed to respond and/or submit summary judgment evidence as to this violation. Therefore there is no genuine issue of material fact for trial as the court finds that defendants have violated The Lanham Act by false, deceptive and/or misleading representations.

Plaintiffs maintain that defendants falsely advertised by using the trademark TifBlair to sell its illegally pirated TifBlair centipede sod in violation of 15 U.S.C. § 1114(1)(a); the TifBlair trademark is registered on the United States Patent and Trademark Office's Principal Register.[42] Thus, plaintiffs maintain that defendants are liable to them as a matter of law for their trademark violations.

Defendants have failed to address this argument and/or submit summary judgment evidence to create a genuine issue of material fact. Accordingly, the motion for summary judgment will be granted to the extent that the court finds that defendants violated 15 U.S.C. § 1114(1)(a).

Finally, plaintiffs submit that they are entitled to a permanent injunction against defendants pursuant to 15 U.S.C. § 1116 to prevent defendants' continued unauthorized use of plaintiff's, prohibiting defendants from infringing on plaintiffs' proprietary turfgrass without express written permission from plaintiffs, and making false designations of TiffBlair. Defendants have failed to address this argument as well. Accordingly, the court will grant plaintiff's motion to the extent that defendants will be permanently enjoined from any unauthorized use of the trademark "TifBlair."

---

[42] Plaintiffs' exhibit D.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted in part and denied in part.  The motion will be granted to the extent that the court finds that defendants, Northeast Louisiana Turf Farms, LLC and Jeffrey Clifton Nicolle, violated the Plant Variety Protection Act by orally representing that the turfgrass sold by NLTF was TifBlair, and selling four pallets of sod falsely represented as TifBlair, and by planting 30 pounds of seed in Mr. Roan's yard without the requisite notice in violation of the PVPA; the court finds that defendants violated the Lanham Act by making a false or misleading representation of fact about TifBlair and by using the trademark TifBlair in violation of 15 U.S.C. § 1114(1). The motion will be further granted to the extent that plaintiffs are entitled to a permanent injunction forever prohibiting defendants from infringing on plaintiffs' proprietary turfgrass, TifBlair, without express written permission from plaintiffs and plaintiff are further enjoined from using the trademark TifBlair; plaintiffs are further prohibited from making false designations of TifBlair; in all other respects, the motion will be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this <u>30th</u> day of September, 2014.

JAMES T. TRIMBLE, JR.
U.S. DISTRICT JUDGE

14